Good morning, your honors. David Coffman and Alan Coffman appearing for the petitioner. I'm David Coffman, I'll be speaking. Pull the mic so we can hear you as well. Is that better? It's fine. I'd like to reserve three minutes of my time for rebuttal. Today's case presents two questions, we feel. Whether a petitioner is ineligible for asylum and withholding because he assisted in the persecution of others on account of a protected ground, or whether a person who actively and repeatedly attempted to prevent that persecution should not be subject to the bar. Secondly, whether the board conducted a proper and complete evaluation of petitioner's conduct. It is our position that the board failed to conduct the type of particularized analysis that is required by common law, as summarized in Miranda Alvarado. That the particularized evaluation should examine both petitioner's personal involvement and the purposefulness of his conduct. Can I ask a question? Yes. At the outset, counsel, Mr. Kumar has not contended before the IJ or the BIA or this Court that he was coerced into taking this job, has he? Not at all. Okay. That we submit that a proper evaluation and review of the totality of the record would show that he repeatedly and consistently acted to prevent the type of persecution that he witnessed by bringing, by reporting it, the acts of official misconduct to his superiors. That since... We're familiar with that, but the BIA and the IJ, first of all, the IJ's decision was made before Miranda came down. Isn't that correct? Yes. Okay. The BIA itself cited Miranda, but essentially adopted the findings of the IJ. Well, it adopted the findings of the IJ, but did not go into any particularization of what factors in the IJ's decision that it was relying on. I feel that both the IJ and the Board failed to first give proper weight or significance to the fact that Petitioner reported the act immediately as they came up and came to his attention, that from the very first day when the record is a little unclear, first, second day, when he saw an incident that he felt caused him to be concerned that something improper was going on, he brought that to the attention of his supervisor. That as his time at CIA staff, and CIA staff was the facility in Tantan, Punjab, India, that he was assigned to for a short portion of his police career, that he not only brought these things to the attention of his superiors, but there's a pattern of him bringing it successively to higher ranking officials, feeling, according to Kumar, that he had reason to believe that things were going on at CIA staff that his superiors were unaware of, and that if they were aware of it, they would take steps to correct it. But you have said that he wasn't coerced or under duress to continue, and so you're relying on his calling it to the attention of the authorities, but he nonetheless continued in his job and actually sought a promotion. So the BIA and the IJ gave that some weight, did they not? They did. Were they wrong in doing so? I find that portion of the BIA's decision particularly disturbing in that this was a person who, Kumar, Petitioner, who was a career police officer, spent approximately three years in the Punjab police, and sought, as a career, relatively short time at the assignment towards the end at CIA staff, that when faced with behavior and conduct which he felt was against Indian law, that was against his police, contrary to his police training, that it doesn't seem that the preferable answer to that is to have a person who is concerned with that conduct simply to walk away, to turn his back and close his eyes. He didn't sign up to be a guard at the CIA. He was a career police officer. Is that correct? Yes, and CIA staff was a police facility. All right. And so what your argument is is that he's a career police officer who happened at some point in his career to be assigned to a facility in which acts of persecution that he objected to took place, but that was not his entirety of his career. That was a relatively short period of career, about six or seven months out of a three-year career. Now, let me ask you something. If we were to agree with you, and I'm posing this because the immigration judge decided the case based on Fedorenko, so it's pre-Naguse, I believe. Yes. He was, and he's pre-Miranda. The BI, however, did in fact invoke, by citation anyway, Miranda. If we were to conclude, and this is hypothetical, if we were to conclude that the evaluation of Mr. Kumar's activities was skewed because it didn't take into account the law that is now governing and should have governed at the time, would we be obligated or should we remand to the BIA for reconsideration under Ventura? Yes, I believe that would be the proper course of action because I would point out that while the BIA noted Miranda Alvarado, it added no additional indication that of additional evaluation or weighing of different factors. The BIA made no reference to respondents' age, to the length of service at CIA staff as compared to his overall career, and I say I think gave short shrift to the redemptive aspects of the fact that he took steps to find somebody there who was in authority who he could bring these activities to their attention. I think we have that point. You're going to run down to your time, and I want to ask one more thing. Your other claim is that the BIA had erred in its derivative asylee ruling. Its ruling was that there was no authority for it to do so. You haven't argued and provided us with any statutory or other regulatory authority, I believe, to counteract the Board's conclusion, so on what basis are we supposed to conclude that they erred in deciding that they didn't have jurisdiction? We are not contested to that. I believe that the sole reason the immigration judge found him ineligible was because he, a derivative beneficiary of his wife's claim, then he had to otherwise be eligible, and it was the judge's, the government's position and the immigration judge's position that he was subject to the persecutor bar. So our approach would be a motion to reopen if it was found that he was not subject to the persecutor bar, and if he was not subject to the persecutor bar, I believe he would be entitled to be granted asylum in his own right, in his own name. So are you, do I understand you say you're not pursuing the derivative? The derivative, no, is a moot point.  I'm pursuing the presumption that the perpetrator was not subject to the persecution in these proceedings. That ---- Okay. Do you want to say, why don't you say that at the same time? I will say it. Let's see what the government has to say. Thank you very much. May it please the Court, Matt Crapo on behalf of the Attorney General. Your Honor, this case involves Mr. Kumar, who is denied asylum and withholding removal. However, this case is not about whether or not he's going to be forcibly removed to India because he was granted the protection of deferral of removal under the Indian law. In this case, three separate agency adjudicators each concluded that Kumar was, Mr. Kumar was ineligible for relief because he had assisted in the persecution of others. He does not dispute that he voluntarily served as an armed guard. Mike, a little closer. It's hard to hear you.  or withholding of removal? Why do you think Negussi is an applicable? Excuse me, Your Honor? Why do you think Negussi is not a governing case? Okay. Negussi decided a very narrow question, which the Board had held in that case that coercion or duress were not an excuse for under the persecutor bar under the INA, which it relied on the Supreme Court's decision in Fedorenko for that ruling. And in Negussi, the Supreme Court simply held that the Board was not bound by Fedorenko on that coercion or duress defense. That's a very narrow reading of Negussi, counsel. We well recognize and counsels conceded that there's no issue of coercion or duress in this particular case. But in Negussi, the Supreme Court also said that the BIA erred in finding that Fedorenko controlled, and it seems to me that in this particular case, both the IJ and the BIA found that Fedorenko really controlled. They did the analysis and analogized Mr. Kumar's situation to the individual in Fedorenko. How is that not error under Negussi? I would suggest that Negussi, again, was simply held that the coercion or duress defense that it had rejected in Fedorenko was not applicable, necessarily, under the INA. However, this Supreme Court's decision in Fedorenko, I believe, is still good law to the extent that it discussed what the meaning of assisted in persecution of others meant. And that's what this Court in Miranda-Alvarado and various other, all the other circuit courts have always looked to Fedorenko for guidance on the meaning of assisting in the persecution of others. And so I would simply submit that Negussi did not rule, necessarily, that the Board had to accept a coercion or duress defense to the persecutor bar under the INA. And so I would say that the Court in Miranda-Alvarado and various other circuit   And so I would say that the Court in Miranda-Alvarado and various other circuit courts have always looked to Fedorenko for guidance on the meaning of assisted And how can that be that Mr. Kumar's circumstances are directly parallel to Fedorenko? And how can that be that Mr. Kumar's circumstances are directly parallel to Fedorenko? Well, I think that the discussion in Fedorenko regarding what the meaning of assisting in persecution of others meant under the Displaced Persons Act is, it still remains good guidance for courts interpreting the persecutor bar under the Immigration and Nationality Act. Yes, that may be, but the quality of what was done by Fedorenko and what was done by Mr. Kumar, who's, you know, he's a career police officer temporarily or briefly assigned to this CIA agency. Now, he isn't claiming duress, admittedly. He complains, speaks out on two occasions, and then he's moved along. So why is that? What I'm troubled by is that the IJ analyzes through the lens of Fedorenko without Miranda and without Ngozi in mind, and I just feel quite uncomfortable that the board, simply by citing Miranda, has not done an adequate job, and it's certainly not clarifying as to how, in light of more current cases, that Mr. Kumar has been properly evaluated. Well, I would suggest that. So why shouldn't we just remand this and remand it to the BIA for reconsideration and clarification? Because I believe that the agency made a reasonable determination that under the assistance of persecution bar that, and the board actually applied Miranda-Alvarado on the personal involvement and personal assistance analysis. But Well, how did he participate in the persecution? Well, he was, although he did not arrest or transport any of the suspects into the CIA staff facility, he acted as an armed guard. He provided external security. It's just like the marshals who provide security at the entrance to this building. Does that mean that they're implicated in everything, that they're directly involved in everything that goes on in this building? That would be, I hate to get into hypotheticals, but I think that Mr. Kumar actually acknowledged that he occasionally was assigned to guard individual prisoners inside the investigations office. And he patrolled the area where the prisoners were detained, and so he provided the information that he needed. But I don't think the government would suggest that anyone who was a member of the Punjabi police force at that time would necessarily be subject to that. The argument that you just made, is that articulated by the IJ or the BIA, or that's what you're getting from the record? That's what I'm getting from the record. Right. That's my point. There's a lot of post hoc rationalization in the briefing, and I'm not faulting you for it, but that's not what the IJ and the BIA did. And I don't know. It's, you know, you can make a constructive plausible argument perhaps, but that's not what the BIA or the IJ did. They looked upon it, and clearly the IJ was influenced, substantially said so, influenced by Fedorenko, drew basically an analogy, direct analogy to a prison guard in a concentration camp. And the facts are materially different. Wouldn't you agree with that? I would agree that the facts are significant. There are differences between the roles that Mr. Kumar played and the Mr. Fedorenko played in the concentration camp. I just think it's a difference of type, being involved in a Nazi concentration camp versus what happened here. But I would suggest that the immigration judge did engage in the particularized analysis by acknowledging that his time that he spent at this facility was relatively short with respect to his entire career on the police force. And so when Petitioners argue that the Board failed to conduct that particularized analysis, I just don't think that gets them anywhere, because the immigration judge did so, and the Board essentially adopted those findings. I would also suggest to the Court that in analyzing this case and determining whether the record compels a contrary conclusion, I'd remind the Court that Mr. Kumar bore the burden of proof to show that the persecutor bar does not apply. So although the agency held that he was subject to the persecutor bar, he bore the burden below to show by a preponderance of the evidence that it did not apply. As the immigration judge found, I think that the record supports his finding that Mr. Kumar played an integral role in facilitating the persecution of others because he was aware of what was going on. He supplied the physical compulsion that allowed him to do so. But he protested. He did protest. And yet they can't cite any legal basis for and, first of all, the immigration judge acknowledged that that was to his credit and weighed that in his favor. The immigration judge understood that he was upset by what he saw that was going on and that he did complain about it. But Petitioner has not pointed to any legal basis for to justify his complicity in what – in the role that he did play. And several other courts have rejected any kind of attempt to justify through redemptive behavior or limited efforts to – What is your best case from other courts? I would cite two courts, Chen, the Eleventh Circuit, 513F3rd at 1260, and the Second Circuit in Z, XIE, 434F3rd. And where were those? Those both involved a persecutor-borrower applied in a Chinese forced abortion cases. In the Second Circuit, K.Z., involved a person who drove vans containing pregnant women that were going to – taking them to the abortion facility. And in Chen, it involved a nurse who locked the doors, kept the pregnant women inside the facility while they awaited the forced abortion. And she only worked at that facility for two months. Well, that's an imaginative stretch. Pardon me? I say you've made an imaginative stretch. Well, I think that they're analogous. Very different context, but the best you could do. It's a slightly different context, but she – you know, the Petitioner argues that his 7 months' role as an armed guard in the staff facility isn't sufficient, and yet the nurse in Chen was there for only two months, and she actually helped one of the women escape. And the Eleventh Circuit said that the fact that she allowed one person to escape did not absolve her of the consequences of her prior actions, previous assistance. So I would suggest that there's no legally cognizable or textual basis for somebody who complains or doesn't really like what's going on to be absolved of their culpability under the persecutor bar. It sounds like what you're saying is short of quitting his job immediately, he wouldn't be able to get around the persecutor bar under any circumstances. I would – I wouldn't go that far, Your Honor, but I would say that he – Because he complained about it as soon as he found out. If those were the facts, he did complain about it, but yet he did continue to – in his role, and he hasn't pointed to any reason why he couldn't have immediately resigned or resigned at some other point in time, which, you know, the agency may have found was sufficient to escape culpability under the persecutor bar. But those aren't the facts in this case. You don't have to use all your time. I appreciate that, Your Honor. I'll just sum up very quickly. I would suggest that the agency reasonably concluded that his voluntary actions as an armed guard at the detention facility where prisoners were severely mistreated on account of their political opinion supports their conclusion that he's subject to the persecutor bar. Because he cannot show the record compels a contrary conclusion, the Court should deny the petition for review. All right. Thank you. Is this okay, my voice? You can hear? Well, if you talk, we can hear. Very good. I'm having trouble judging my voice. That's okay. Okay. I'd like to join with Judge Winn that Ngozi stood for a larger concept, that there was a continuum of behavior and that the immigration judge and the board would be required to take into consideration the totality of the circumstances in making an evaluation. And when they were talking about duress as one of those factors, I don't think I'm sorry, Ngozi, I don't think duress was the only factor that the Court's decision in Ngozi would allow to be taken into consideration. Also, I believe, Judge Fischer, that you had mentioned that he had made two reports. The record shows that he made at least four reports over. Four. Okay. But, again, I think that is a very important distinction from the case of Chen, where there was an isolated, redemptive act of letting one person escape, that the Kumar House is a clear pattern of behavior of when he sees activities that he thinks are contrary to law, contrary to police procedure, he reports it to his superior. What's your response to counsel's argument that he had the burden and he didn't show why it was impossible for him to take steps to seek reassignment or to resign? Well, again, I don't think that's the legal standard. I don't think that should be the legal standard. I think that the legal standard is that the court has to be very clear that to see illegality going on, the answer is not to quit. The -- I don't think the answer that we should encourage is to quit or ask to be reassigned so I don't have to look at this. He took steps to stop it. Did he take steps to be reassigned after the fourth time? No. He was reassigned almost immediately after the fourth time. You know, whether the fourth one prompted his reassignment, they were tired of him complaining. That would be the clear implication. He was never told what prompted his reassignment. Also, I have trouble, and it might just be a semantic thing, the immigration judge and the board adopted language that he complained. He didn't complain. He reported. I don't think that given Kumar's testimony and that who he reported to and when he who a constable was allowed to speak to, that he was only allowed to speak to his head constable, he was not allowed to jump the chain of command, and that once he was promoted, it put him in a position to speak to the superintendent of the facility and later to a district superintendent, which would have been twice to head constables once the superintendent to the facility, once to the district superintendent after promotion, that those reports not – I think I'm counting up. You are. I think we got your point. Okay. You can wrap it up. Thank you. Okay. We believe that the court – that the board failed to conduct an adequate, particularized evaluation of the conduct, and that the court should make clear that simply being a guard, an armed guard, does not per se mean that he's a persecuted, that the board has to conduct. Counsel, we have your point. Thank you very much. Thank you both. I appreciate counsel's argument, and the case is submitted.
judges: Noonan, Fisher, Nguyen